UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENT CRAIG,<br><br>   Plaintiff,<br><br>   v.<br><br>CRAIG KOENIG, et al.,<br><br>   Defendants. | Case No. 19-cv-05661-EMC<br><br>**ORDER OF SERVICE**<br><br>Docket No. 9 |

## INTRODUCTION

Kent Craig, a prisoner at the Correctional Training Facility in Soledad, filed this *pro se* civil rights action under 42 U.S.C. § 1983, the Americans With Disabilities Act, and the Rehabilitation Act. The Court reviewed the complaint and dismissed it with leave to amend. Mr. Craig's amended complaint is now before the Court for review under 28 U.S.C. § 1915A. His application for appointment of counsel also is before the Court for consideration.

## BACKGROUND

Mr. Craig alleges in his amended complaint that he has intervertebral spinal disc syndrome and is protected by the Americans With Disabilities Act and Rehabilitation Act. Docket No. 9 at 1. He alleges that, on January 25, 2018, he was provided a "lower bunk accommodation(s) via form CDCR 1824." Docket No. 9 at 2.[1] Mr. Craig further alleges that he was deprived of his

---

[1] The form attached the amended complaint is not a CDCR-1824 request for reasonable accommodation form and instead is a February 5, 2018, response from the Reasonable Accommodation Panel (RAP) that was considering Mr. Craig's request for a lower bunk. That RAP response form states that (a) Mr. Craig was given an interim accommodation of a lower bunk on January 23, 2018, "pending RAP"; (b) the RAP found no recent medical record of hip and back

1

1  lower bunk accommodation and ordered to relocate to another bunk on April 26, 2019, by
2  California Department of Corrections and Rehabilitation (CDCR) officials, even though the
3  accommodation form had not been rescinded. *Id.*

4  Mr. Craig further alleges that when he, an African-American, was moved out, his lower
5  bunk then was assigned to a Hispanic inmate. Docket No. 9 at 2. He further alleges that "due
6  process" is violated when the CDCR fails to follow its own regulations on housing and the ADA.
7  *Id.* at 4.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Title II of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act, as amended and codified in 29 U.S.C. § 701 *et seq.* (RA), prohibit discrimination on the basis of a disability in the programs, services or activities of a public entity. Federal regulations require a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

The elements of a cause of action under Title II of the ADA are: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either

---

pain for Mr. Craig and therefore scheduled an appointment for him to address his concerns with his primary care registered nurse; and (c) in the interim, Mr. Craig has "been temporarily housed in a lower bunk pending medical evaluation." Docket No. 9 at 10. The RAP response form did not grant *permanent* permission to have a lower bunk.

1    excluded from participation in or denied the benefits of the public entity's services, programs or
2    activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,
3    denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*,
4    295 F.3d 890, 895 (9th Cir. 2002). A cause of action under § 504 of the RA essentially parallels
5    an ADA cause of action. *See Olmstead v. Zimring*, 527 U.S. 581, 590 (1999); *Duvall v. County of*
6    *Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Liberally construed, the amended complaint states a
7    claim against the CDCR for a violation of the ADA and RA based on prison officials' refusal to
8    allow Mr. Craig to remain in a lower bunk in April 2019.

9    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a
10   right secured by the Constitution or laws of the United States was violated, and (2) that the
11   violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487
12   U.S. 42, 48 (1988).

13   Mr. Craig alleges that an inmate of a different race obtained the lower bunk Mr. Craig was
14   removed from in April 2019. Even with liberal construction, this allegation does not state a claim
15   for a violation of Mr. Craig's rights under the Equal Protection Clause. As the Court explained in
16   the order of dismissal with leave to amend, a plaintiff trying to state a claim for an equal
17   protection violation "must show that the defendants acted with an intent or purpose to discriminate
18   against the plaintiff based upon membership in a protected class." *Thornton v. City of St. Helens*,
19   425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted). Any inmate
20   who replaced Mr. Craig would be of some race and the mere fact that the replacing inmate was of
21   a different race does not suggest an equal protection violation. Mr. Craig alleges no facts that
22   remotely suggest an intent or purpose to discriminate against him based on his race. Further leave
23   to amend will not be granted because it would be futile: the Court already explained what Mr.
24   Craig needed to allege and he was unable or unwilling to make the necessary allegations.

25   Mr. Craig alleges that prison officials' failure to comply with state regulations about
26   housing and the ADA violated due process. The due process claim is dismissed without leave to
27   amend because the theory asserted – that a state law violation is automatically a due process
28   violation – has no legal support. *See Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (a mere error

of state law is not a denial of due process); *Sandin v. Conner*, 515 U.S. 472, 483 (1975) ("the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause"); *id.* at 484, 487 (right to due process in prison is generally limited to freedom from (1) a restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and (2) state action that "will inevitably affect the duration of [a] sentence"). A due process claim under § 1983 against individual defendants for failing to comply with the ADA also is unavailing. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

Finally, Mr. Craig has requested that counsel be appointed to represent him in this action. A district court has the discretion under 28 U.S.C. §1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires an evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *See id.* Neither of these factors is dispositive and both must be viewed together before deciding on a request for counsel under § 1915(e)(1). Exceptional circumstances are not present because it appears that there is a low likelihood of success on the merits, *see* footnote 1, and Mr. Craig was able to adequately articulate his claim *pro se*. Mr. Craig's request for appointment of counsel to represent him in this action therefore is DENIED. Docket No. 9 at 7.

## CONCLUSION

1. The amended complaint, liberally construed, states a cognizable claim under the ADA and RA against the California Department of Corrections and Rehabilitation. All other defendants and claims are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the amended complaint, and a copy of all the documents in the case file upon the California Department of Corrections and Rehabilitation in Sacramento, California.

4

1       3.      In order to expedite the resolution of this case, the following briefing schedule for
2 dispositive motions is set:
3               a.      No later than **August 14, 2020,** Defendant must file and serve a motion for
4 summary judgment or other dispositive motion. If Defendants is of the opinion that this case cannot
5 be resolved by summary judgment, Defendant must so inform the Court prior to the date the motion
6 is due. If Defendant files a motion for summary judgment, Defendant must provide to Plaintiff a
7 new *Rand* notice regarding summary judgment procedures at the time it files such a motion.
8 *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).
9               b.      Plaintiff's opposition to the summary judgment or other dispositive motion
10 must be filed with the Court and served upon Defendant no later than **September 25, 2020**. Plaintiff
11 must bear in mind the notice and warning regarding summary judgment provided later in this order
12 as he prepares his opposition to any motion for summary judgment.
13              c.      If Defendant wishes to file a reply brief, the reply brief must be filed and
14 served no later than **October 16, 2020**.
15      4.      Plaintiff is provided the following notices and warnings about the procedures for
16 motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If Defendants file a motion for summary judgment for failure to exhaust administrative remedies, it is seeking to have the case dismissed. As with other defense summary judgment motions, if a

motion for summary judgment for failure to exhaust administrative remedies is granted, Plaintiff's case will be dismissed and there will be no trial.

5. All communications by Plaintiff with the Court must be served on Defendant's counsel by mailing a true copy of the document to Defendant's counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, Plaintiff may mail a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to the party.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

8. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

9. Plaintiff's request for appointment of counsel is DENIED. Docket No. 9 at 7.

**IT IS SO ORDERED**.

Dated: May 15, 2020

_____
EDWARD M. CHEN
United States District Judge