United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENT CRAIG,

Plaintiff,

v.

CDCR,

Defendant.

Case No. 19-cv-05661-EMC

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Docket Nos. 39, 40

## I. INTRODUCTION

In this *pro se* prisoner's civil rights action for damages, Kent Craig complains about his prison's handling of an ADA accommodation request. Defendants moved for summary judgment. Mr. Craig did not file an opposition, and instead filed a cross-motion for summary judgment.

For the reasons discussed below, Defendants' motion for summary judgment will be granted and Mr. Craig's will be denied.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.

At all relevant times, Mr. Craig was housed at the Correctional Training Facility ("CTF"). From November 7, 2017 to April 26, 2019, Mr. Craig was able to be housed in a lower bunk. *See* Docket No. 39-3 ("Freeman Declaration") ¶ 10. This was not because such a bunk had been medically recommended, but rather because there was sufficient space at CTF for Mr. Craig to be given his preference. *See id.*

Since 2007, the Department of Veteran Affairs has provided Mr. Craig with disability compensation, for "invertebral disc syndrome." *See* Freeman Decl., Ex. E at DEF 40-41.

In 2017, Mr. Craig did not make a single "attempt . . . to obtain health care services for complaints of hip and back pain." *Id*. at DEF 42; *see also id*. at DEF 45 (stating that health care grievances had been reviewed for any complaints by Mr. Craig of hip and back pain, and none had been found).

On January 19, 2018, Mr. Craig submitted a form entitled "Reasonable Accommodation Request." *See* Freeman Decl., ¶ 6. He stated that he experienced pain in his hip and lower back when climbing into an upper bunk, claimed to have a disability related to his past military service, and requested to be permanently assigned to a lower bunk. *See id*., Ex. D.

Four days later, Mr. Craig was interviewed by non-defendant Sergeant Thompson regarding this request. *See* Freeman Decl., Ex. E at DEF 43-44. Non-defendant Sergeant Thompson granted Mr. Craig an interim lower-bunk assignment while prison officials evaluated his request for a permanent assignment. *See id*. at DEF 43.

In preparation for a review by CTF's Reasonable Accommodations Panel ("RAP"), non-defendants Dr. Sweet and Nurse Block each completed Disability Verification Process ("DVP") Worksheets. *See* Freeman Decl. at DEF 42, 45. Both noted that Mr. Craig had not sought treatment for his pain. *See id*. at DEF 42, 45. Dr. Sweet found that, based on Mr. Craig's medical records, a disability accommodation was not indicated. *See id*. at DEF 42.

On January 25, 2018, the RAP reviewed Mr. Craig's request. *See* Freeman Decl. ¶ 7 & Ex. E. The RAP noted that Mr. Craig had never complained of hip or back pain. *See id*. It scheduled a medical appointment for him. *See id*. The RAP granted Mr. Craig a lower bunk accommodation "[i]n the interim," which was to be "temporar[y] . . . pending medical evaluation." *Id*. at DEF 39.

Mr. Craig subsequently had medical appointments with a non-defendant nurse and with non-defendant Dr. Silva. *See* Freeman Decl., Exs. F, G. The latter ordered an x-ray of Mr. Craig's hip. *See id*. at DEF 50. In the appointment with Mr. Craig, Dr. Silva noted that Mr. Craig worked in the CTF bakery, and offered Mr. Craig acetaminophen, which was refused. *See id*. Dr. Silva did not recommend a lower-bunk accommodation for Mr. Craig. *See id*.

An x-ray was performed on Mr. Craig's hip, and the radiologist found no dislocations, fractures, foreign bodies, or other abnormalities. *See* Freeman Decl., Ex. I at DEF 54; *see also*

Docket No. 39-2 ("Gronna Declaration"), Ex. A at DEF 82, 85.

Mr. Craig had two follow-up appointments with Dr. Silva. *See* Gronna Decl., Ex. A DEF 84-85. Dr. Silva noted that Mr. Craig's hip pain was improving, that when Mr. Craig took acetaminophen it helped with said pain, that Mr. Craig reported being able to exercise without incident, and that Mr. Craig was "pacing athletically." *Id*. at DEF 85. Dr. Silva did not recommend a lower-bunk accommodation in either appointment. *See id*. at DEF 84-85.

On April 26, 2019, based on changes to institutional availability, Mr. Craig was moved from a lower bunk to an upper bunk. *See* Freeman Decl., ¶ 10.

After this change, on May 28, 2019, Mr. Craig saw non-defendant Dr. Anderson regarding his request for a lower-bunk accommodation. *See id*. ¶ 11; *see also* Docket No. 39-4 ("Anderson Declaration") at ¶ 6. Dr. Anderson noted that Mr. Craig was able to lift himself onto the elevated exam table, rise out of his chair normally, and had a steady gait and average or above-average strength. *See* Anderson Decl., Ex. A at DEF 57. Mr. Craig also reported to Dr. Anderson that he was able to climb up and down stairs and that ibuprofen, Tylenol, and Naproxen helped with his hip pain. *See id.* Dr. Anderson offered to refer Mr. Craig to physical therapy for his pain but was refused. *See id*. at DEF 58. Dr. Anderson concluded that a lower bunk assignment was not necessary. *See id*.

A. <u>Procedural History</u>

Mr. Craig filed the instant action on or after August 22, 2019. *See* Docket No. 1 at 6 (dating the original complaint). The Court dismissed the original complaint with leave to amend. *See* Docket No. 8. Mr. Craig filed a first amended complaint, Docket No. 9 ("FAC"), which the Court screened pursuant to 28 U.S.C. § 1915A, *see* Docket No. 10. The Court found that Mr. Craig had stated cognizable claims for violation of the ADA and RA and ordered Defendants to respond to those claims. *See id*.

Mr. Craig subsequently moved for a preliminary injunction, *see* Docket No. 12, which the Court denied, *see* Docket No. 13.

After extensions of time, Defendants moved for summary judgment. *See* Docket No. 29. The Court denied this first, sparse motion for summary judgment without prejudice to renewal.

*See* Docket No. 35.

After an extension of time, Defendants filed a second motion for summary judgment with fuller argument. *See* Docket No. 39 ("Summary Judgment Motion" or "MSJ"). Mr. Craig did not file an opposition. *See generally*, Docket. Instead, Mr. Craig filed a cross-motion for summary judgment. *See* Docket No. 40. These motions are now before the Court for adjudication.

## III. VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the complaint occurred at a jail in Monterey County, which is located within the Northern District. *See* 28 U.S.C. §§ 84, 1391(b). The Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983 and the ADA/RA. *See* 28 U.S.C. § 1331.

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a typical summary judgment motion, a defendant moves for judgment against a plaintiff on the merits of his claim. In such a situation, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

When a defendant moves for summary judgment on an affirmative defense on which he

bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Statements of fact in Mr. Craig's amended complaint are considered as evidence because the document was signed under penalty of perjury. *See* Docket No. 6 at 7.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See id*. at 631.

## V. **DISCUSSION**

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA"), provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations, an implementing regulation provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). The duty to provide "reasonable accommodations" or "reasonable modifications"

United States District Court
Northern District of California

for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. *Weinreich v. Los Angeles County MTA*, 114 F.3d 976, 979 (9th Cir. 1997). To prove that a public program or service violated Title II of the ADA, the plaintiff must show: (1) the plaintiff is a qualified individual with a disability; (2) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001). All four elements are required. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Essentially the same showing is required to state a cause of action under Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794. *See Olmstead v. Zimring*, 527 U.S. 581, 589–91 (1999); *Duvall*, 260 F.3d at 1135. As the parties have not indicated any relevant difference between the ADA and Rehabilitation Act analyses for Mr. Craig's claims, the claims will be addressed together, as they frequently are. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).

Defendants argue that Mr. Craig fails to fulfill the first element; that is, he fails to show that he is a qualified individual with a disability. *See* MSJ at 11. The Court agrees.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1) (2009). Thus, in order to show that he qualifies for relief, Mr. Craig must show that one or more of his major life activities is, has been, or is perceived to be, impaired.[1]

Defendants introduced evidence that Mr. Craig's major life activities were not impaired. Specifically, Defendants introduced evidence that Mr. Craig did not seek treatment for his hip or back in the year preceding his request for an accommodation. *See* Freeman Decl., Ex. E at DEF

[1] Examples of major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Operation of major bodily functions also is a major life activity. *See id*. at § 12102(2)(B).

39-45. After the request was filed, in three evaluations with Dr. Silva, Mr. Craig "pac[ed] athletically," and reported that he could "exercise [without] incident" and maintained a job in the prison bakery. Gronna Decl., Ex. A at DEF 85, 83; Freeman Decl., Ex. G at DEF 49. In a later evaluation by Dr. Anderson, Mr. Craig walked steadily, was able to "[r]ise[] easily to and from chair to exam table," and reported that he was able to climb stairs. *See* Anderson Decl., Ex. A at DEF 57. Although Mr. Craig initially refused pain medication, he later stated that "Ibuprofen[,] Tylenol[,] and naproxen have been effective" in treating his pain. *See* Freeman Decl., Ex. G at DEF 49; Anderson Decl., Ex. D at DEF 58. Defendants thus have introduced evidence in the record that Mr. Craig's major life activities were not limited.

Defendants' evidence shifted the burden to Mr. Craig to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. He did not carry this burden.

Mr. Craig's Amended Complaint did not identify *any* activity that he is unable to perform, much less a major life activity. *See generally*, FAC. Instead, it argued that he was disabled because the Veterans Administration had deemed him so in a 2008 letter, which stated he had a disability from "invertebral disc syndrome." *Id*. Likewise, Mr. Craig's cross-Summary Judgment Motion relies exclusively upon the Veterans Administration letter and does not identify any activity he is unable to perform. *See generally*, Cross-MSJ.

Defendants explain why the letter from the Veterans Administration is insufficient to show that Mr. Craig is disabled within the meaning of the ADA and RA. First, the letter predates the events giving rise to this action by more than a decade. *See* Freeman Decl., Ex. E at DEF 41. Second, the letter is silent on the degree to which the Veterans Administration considers Mr. Craig to be disabled from "invertebral disc syndrome," and so it cannot be determined from the letter alone whether a major life activity is "*substantially* limit[ed]," as the ADA and RA require. 42 U.S.C. § 12102(1) (emphasis added). It is not even clear whether "invertebral disc syndrome" is related to Mr. Craig's hip pain. Third, the Veterans Administration grants disability compensation based on reduced earnings capacity, and not based on impairment of a major life activity. *See* 38 C.F.R. § 4.1. Reduced earnings capacity alone does not establish ADA and RA eligibility. *See e.g., Faulkner v. ATC Vancom of Nevada Ltd. P'ship, Inc.*, 203 F.3d 830 at *2 (9th Cir. 1999)

United States District Court
Northern District of California

(unpublished) (letter from the Veterans' Administration did not prove the plaintiff was disabled because it did not "describe the basis of [his] limitations" or "provide the court with any evidence as to the nature, permanence or severity of his condition"). *See also McCray v. McDonough*, No. 18-CV-1637-BHL, 2022 WL 1203024, at *4 (E.D. Wis. Apr. 22, 2022) (Because "[t]he VA's percentage ratings are not a mechanism for measuring how much someone's major life activities are substantially limited by a disability . . . a plaintiff cannot rely on his VA disability classification to show a disability under the ADA or Rehabilitation Act."); *Burkhart v. Intuit, Inc.*, No. CV-07-675-TUC-CKJ, 2009 WL 528603, at *15 (D. Ariz. Mar. 2, 2009) (same); *Thorn v. BAE Sys. Haw. Shipyards, Inc.*, 586 F. Supp. 2d 1213, 1221-22 (D. Haw. 2008). Thus, the only evidence submitted by Mr. Craig is insufficient to show that he was disabled within the meaning of the ADA and RA.

In sum, Defendants have introduced evidence that Mr. Craig was not disabled within the meaning of the ADA and the RA, and Mr. Craig has failed to rebut that evidence. Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED.** Docket No. 39. Plaintiff's motion for summary judgment is **DENIED**. Defendants are entitled to judgment in their favor. The Clerk shall close the file.

This order disposes of Docket Nos. 39 and 40.

**IT IS SO ORDERED**.

Dated: September 26, 2023

EDWARD M. CHEN
United States District Judge